The next case today is Brian Watson v. Michelle Edmark, appeal number 21-1208. Attorney Sisti, please introduce yourself for the record and proceed with your argument. Certainly. May it please the court, my name is Mark Sisti, I represent Brian Watson in this matter, and I would like to reserve two minutes in rebuttal if the Chief Judge would allow. Please do. Thank you. Summary judgment most definitely should not have been granted in this case. What is afforded to criminal defendants was not afforded to Brian Watson. We are all guaranteed when we enter the courtroom that the standard of proof beyond a reasonable doubt would be adhered to, that the presumption of innocence would be adhered to, but what might be the most effective tool for trial lawyers during the course of defending their clients is the right to confront the witnesses against him. Brian Watson was denied the ability to confront. Now we've laid that out in some detail, but what was actually utilized in this case as the so-called expert witness was a gentleman that flew in from the NMS lab from Willow Grove, Pennsylvania, who never saw the sample that was tested ever, never laid eyes on it, never utilized it in any of the machines that were doing the work, did not know the qualifications of the analysts that were analyzing the material, did not supervise the analysts that were analyzing the material, had no knowledge if the analysts had ever committed a fraud, had no knowledge of disciplinary records with regard to the analysts, could not testify as to whether or not the analysts had ever failed any known sample testing, was not on the floor of the lab, and in fact was not even the primary reviewer of the material that was laid before him. The record would reflect that this particular so-called expert was doing nothing more than in a lab of 300 employees. Counsel, that sounds like a wildly implausible characterization of what happened here. Let me ask you, there was evidence that there were anywhere from 5 to 12 people involved in the lab who were involved in maintaining custody of the blood samples, analyzing the blood samples, reporting the results. The logic of your position seems to be that every one of those people in that lab could be as many as 5 or 12, but all of those individuals, in order to present to a jury the results of the analysis of the blood sample, all of those individuals had to be in court describing what they did, what their credentials were, how they reported the results, in order for the government to introduce the results of the analysis of the blood sample. Is that your position? No, I think that would be a wildly overbroad position. I think that the standard... I'm sorry, I'm sorry. It seems to be the logic of your position. The logic of my position is to follow what the case law is, and that is to have somebody that is directly involved with this particular testing, somebody that independently tests on the stand so that we can confront to determine, in the crucible of cross-examination, whether or not the introduction of that particular material evidence is reliable. What do you mean by the person who tests? We need somebody, at least in the supervisory role, that would have some contact with the Well, I mean, obviously, we need somebody... Four minutes remaining. I'm sorry. We need somebody with knowledge with regard to the testing. So now it's with knowledge with respect to the testing. Here's what I understand the testimony suggested. When he's asked what he does, he says, when I review a case, I basically look at all the documentation we have on the case. I look at the chain of custody. I look at the requisition. I make sure everything has been entered properly into the computer system. Then I review all of the instrument tracings to make sure that what was reported was, in fact, what we have in those tracings. How is that different than what the supervisor would be able to testify about? Because the supervisor would know who the analyst is. This man didn't even know who he was or she was. When asked whether or not the analyst had a record of fraudulent behavior, a record of false results, he said, I don't know. That's HR's problem. Well, that's not HR's problem. That's a problem with the quality and the reliability of evidence placed before a jury when you're begging for a conviction of proof beyond a reasonable doubt. If all you're doing is parroting numbers off of a machine that you didn't even calibrate, then, quite frankly, you're doing nothing to advance an actual reliable result. All you're doing is something any one of us could have done, taken the report and read it into the record. And again, he wasn't even the first person to review, nor the second. He came after a secondary review. But to follow up on Judge Barron's question, so statements like, you know, I look to ensure that it was properly entered. I mean, he can be cross-examined on the foundation for his having said that, right? He could be impeached. What I'm missing here is how does this implicate Crawford? Well, it implicates Crawford because we didn't get meaningful cross-examination. And those were just some of the examples that I gave you. And, you know, it does sound extreme, and I agree with Judge Lippis, that in most cases, you wouldn't be in this position. But if you carefully read the record, we specifically asked those questions. Did he know the actual analysts? Did he know if these analysts themselves, the people that were punching samples into machines, did he know if they had ever been disciplined before? I mean, if they can't answer simple questions like that, then we have no cross-examination. I mean, these are questions we ask all the time of everybody. We don't assume police officers tell the truth all the time. Just go back to Judge Howard's question. He testified, I checked to see whether it was properly entered. And I asked him specifically whether he ever calibrated that machine, and he said no. But looking at a report from somebody else who claimed to have properly entered the material is what he's reviewing. That would be as if a service manager at a dealership said, yes, my mechanic put new spark plugs in your car. Without knowing whether the mechanic actually did it. But it's on a piece of paper that the mechanic said he placed new spark plugs into your engine. Did he see him do it? No. Does he know who the mechanic was? No. Did the mechanic ever fraudulently report that he did replace parts when he never did? I don't know. That's essentially where we were in this case. This is a corporate representative who's nothing more than a testifier. And frankly, he kind of almost admits to that. He had no hands-on contact whatsoever with the sample from the time it came to the lab till the time reports were generated. Zero. Nothing. I'm sorry. I'm timed out apparently. Unless there's a question. Any further questions? No. Thank you. Thank you, Attorney Sisti. At this time, please mute your audio and video. And Attorney Woodcock. If you could unmute your audio and video and introduce yourself on the record to begin. My camera is not. I'm not sure what's wrong. I'm clicking on it and it's not unmuting. The camera isn't. Let's pause for a moment. May it please the court. Elizabeth Woodcock. I represent the warden of the New Hampshire State Prison. I want to just respond initially to one thing that Mr. Sisti raised in his argument. He talks about how Dr. Eisen-Schmidt did not know anything about the disciplinary records or anything of that sort connected to the analysts. And I want to point out that, to my knowledge, those records were not requested as part of discovery and they were not really an issue before the trial court in terms of Mr. Sisti's argument that Dr. Eisen-Schmidt was not an appropriate witness. He didn't raise the disciplinary records of the analysts. And so that issue was not properly before this court. The issue here is not simply whether summary judgment was appropriate, it's whether the New Hampshire Supreme Court misapplied clearly established federal law as enunciated by the United States Supreme Court with respect to the Confrontation Clause issue. And the cases that the United States Supreme Court has issued to date have not stood for the proposition that a person like Dr. Eisen-Schmidt cannot testify as a summary witness. Counselor Woodcock, can I ask you just to refine the question that's before us somewhat more? I had understood there to be a particular type of challenge on habeas to the state court's ruling that would enable us to then review de novo the question of whether this was an witness for Confrontation Clause purposes, which was that there was an unreasonable factual determination by the state Supreme Court, and that that was the sole contention about the way in which it had acted unreasonably. Is that your understanding? That is not my understanding, Your Honor. My understanding is that Mr. Sisti was challenging the testimony of this witness as a violation of the defendant's petition. That's true, but there's a threshold question of what standard of review do we use in evaluating that question on this record? And since the state court came out differently than the petitioner wishes, there's a threshold question of are we supposed to defer to that ruling by the state court? And I had thought there was an argument to us that we needn't defer to it because it had made an unreasonable factual determination with respect to the role of this witness. Well, I think that he places the argument before the United States District Court in that way, and that involves this whole argument about whether any of these analysts had any disciplinary records or anything of that sort. But the question that the petitioner, then the defendant, posed to the New Hampshire Supreme Court was, I believe, a straight violation of the Confrontation Clause. It was an application of… Yes, but now on Habeas, I guess what I'm saying is there was a finding by the state court in rejecting the Confrontation Clause claim about the role the analyst played, correct? Yes. And I thought on Habeas, the petitioner is saying that factual finding about the role was unreasonable on this record. Well, he may be saying that, Your Honor. That's certainly the argument that he made to Judge LaPlante, but it's not the argument that he made to the trial court or to the state Supreme Court. Well, maybe so, but just putting that aside for a moment, if we concede that it was made to the Habeas Court, and he's now appealing the ruling of the Habeas Court, the district court, what is your position about that argument, which the district court seemed to reject, that there was an unreasonable factual determination about the analyst's role by the New Hampshire Supreme Court? Well, I think that the question is twofold. The first is whether when the district court is reviewing the record that has been developed in the state court, it has to defer to that record. And so the arguments that are made in the state court are the arguments that are preserved for Judge LaPlante to review. And it is my view that those arguments were not made to the argument... Is the argument you're making to us now an argument that the state made to the district court on Habeas? I made the argument to Judge LaPlante that the argument that Mr. Sisti was making was not the same one that he made to the trial court, yes. Counsel, let me... Mr. Sisti, I'm sorry. But my understanding is that's not the ground on which Judge LaPlante ruled in your favor. Judge LaPlante ruled that the trial court and the state court, the Supreme Court, had not misapplied federal law and had not misinterpreted the facts. Right, but in saying that, he did not rely, Judge LaPlante did not rely on the argument you're now making, which is that the Habeas petition was raising a ground not raised to the state court. No, I made that argument to Judge LaPlante. I know, but what I'm saying is that the district court did not rely on that argument in ruling in your favor. No, the district court relied on the record that had been developed in the trial court. Right, so put it aside for a moment. This point, which you say you preserved, which is that the Habeas petition rests on an argument never raised to the state court. Putting that aside for the moment, we're on appeal from a denial of a Habeas petition in which the district court rejected the contention that the state court made an unreasonable factual determination. Okay, what is your answer to the appellant's contention that the district court erred on that ground because, in fact, the record shows the state court did make an unreasonable factual determination vis-a-vis the role of the analyst? Well, I think that the problem that I have with the question in answering it, and I'm not trying to be evasive, is that I think that it winds up tackling two different points. The first is the factual record of what Dr. Eisen-Schmidt's role was, and I think that the New Hampshire Supreme Court made a very clear finding of what his role was. He wasn't simply just reading the printouts and not doing any kind of critical analysis. He was reviewing all of the reports and reaching a conclusion that I believe he testified individual analysts could not reach, that you needed his level of education. But with respect to was he doing anything more than reviewing or repeating, with respect to the outcome of the test, as opposed to his evaluation of whether that outcome is supportable given those readings, is it the case that the record shows him to have been doing anything more than simply have looked at reports prepared by others and then made an evaluation based on those inputs? Well, yes. I mean, the New Hampshire Supreme Court described what he did. He went through all of these reports. I'm not a mathematician, and I don't know how these things exactly work, but he would have been able to determine if there was an error in one of the reports that had been submitted to him based on the other results. So he's not simply looking at printouts and saying, oh, well, this is all we've got. He's assessing the different results against each other, and it's under that circumstance when he says that the individual analysts would not understand the overall result of these toxicology reports. You need to have somebody who can look at them all and integrate them in a way that the results check against each other and make sense. So even if you had the individual analysts coming on, you could challenge their employment record if that had been raised in the trial court or as a reason to keep Dr. Eisen-Schmidt from testifying. You could challenge their results, but they would not be able to tell you whether the end result, which is what Dr. Eisen-Schmidt can testify to, was accurate. Counsel, I think Mr. Sisti is going to have to try to clarify for us exactly what he's arguing here, because I don't think it's always that clear. Now, I look at the decision of the New Hampshire Supreme Court. They state quite extensively their understanding from the record of exactly what Dr. Eisen-Schmidt did. I don't think there's any issue of material fact about what he did. The question is whether what he did and what he testified to is consistent with the confrontation clause cases of the United States Supreme Court. I understand the New Hampshire Supreme Court to have said what he did, and this was their judgment, did not in any way violate those confrontation clause cases. Using sort of the framework, they were saying that the decision of the New Hampshire Supreme Court did not violate the clearly established law of the Supreme Court. My understanding, that's what we're dealing with here. That doesn't involve any determination of fact. It's a legal question whether, again, what the New Hampshire Supreme Court did was consistent, whether it did or did not violate the clearly established law of the Supreme Court. I thought that's what we were dealing with here. That was my understanding, too, Your Honor. Ms. Councilwoman, let me just make sure I understand. I thought you said to me that your understanding was that on appeal, as below, petitioner was contending under AEDPA that the New Hampshire Supreme Court had made an unreasonable factual  Wasn't that the argument? Well, I think that that's the argument that Mr. Sistey made before Judge LaPlante. But that's the argument below for the habeas petition. That's not an argument about an unreasonable application of law, nor is it the contention about it being contrary to law. That's an argument that there was an unreasonable factual determination. And that is the argument that I told the court he had not made before the trial court. Also, I understand that. But that's also the argument Judge LaPlante ruled in your favor without accepting that ground for ruling in your favor. Instead, Judge LaPlante seemed to think that the claim that there was an unreasonable factual determination was wrong because the factual determination was reasonable. Well, I think that that's correct. So on appeal, the only ground for habeas is based on the predicate contention that we an unreasonable factual determination. Am I wrong about that? I think that the answer is that you owe the New Hampshire Supreme Court deference because its factual findings were not unreasonable. Whether you owe deference to Judge LaPlante's finding, I think, is a different matter. I agree with you on that. I agree with you on that. But just for the moment, if we set aside the point which you preserve, that there is another ground for denying the habeas petition, which has to do with a failure to have raised the challenge to the factual finding to the state Supreme Court, putting that aside for the moment, although there may be reason to discuss the unreasonable application of law or contrary to law components, in fact, the habeas petition below was grounded on a claim of an unreasonable determination of fact by the state Supreme Court. It was raised on both points, Your Honor. Are both then raised on appeal? I would have to let Mr. Sissy answer that question. Do you have a view on that question? I found his brief a little difficult to follow, I have to confess. And that is no criticism of him. Yes, I appreciate that. Okay, I just wanted to clarify. But I would like to, if I might, just follow up on that point, because I tend to see this case, the posture of this case, very similar to what Judge LaPez has laid out. But if the claim made in the federal court is that there was an unreasonable determination of New Hampshire Supreme Court, and I take it that that alleged determination of fact is that the participation and the conclusion of Mr. Eisenschmid was real and direct, that's how that was framed below by the petitioner here. But if that's an incorrect framing, and I think you've argued that because you have argued that this really is application of law to fact, so it's a different standard. If that's an incorrect framing, I want to follow up Judge Barron's question. Would you say that we should conclude that there's been a waiver of the application of correct standard of review here, or do we need to get into the merits applying the correct standard of review, if you follow my compound question? I will do my best to answer that, Judge Howard. I think that the standard of review that the court should apply is the one that is in AEDPA, and that is the question of whether the New Hampshire Supreme Court misapplied federal law, or if the record does not support the facts that it found. The record supports the facts that it found, and I cannot tell you that I find anything related to the confrontation clause clearly established. It's a very confusing area of the law, and I think the New Hampshire Supreme Court's decision on that point… Counselor Woodlock, let me just… It would cost us to button up. What I take was a piece of Judge Howard's question that I'm not sure you fully responded to. You suggested that there's the unreasonable application of law component of the EPIR standard, and the unreasonable termination of fact component of the EPIR standard are both in play in this appeal. I think Judge Howard was asking whether the unreasonable application of law component has been waived on appeal. Do you have a view on that for the state? I think that if you read the New Hampshire Supreme Court decision, the court is saying that trial court had misapplied federal law. I think that that is the gist of Chief Judge Lynn's decision. Yeah, but I'm asking you on habeas appeal, has the unreasonable application of law component of the EPIR standard, has that question been waived by the petitioner either in the district court in habeas or on the state's view? It's so hard for me to characterize Mr. Sisti's argument, Your Honor. Again, I don't want to sound like I'm trying to avoid the question. It sounds like you're not taking the position that you're not willing to say it's waived. I'm not certain that it is waived. What I am certain of is that some of the arguments that state courts have, and that becomes a problem because what he's saying to this court right now is if I had these personnel, if I could question these people about their personnel records or something of that sort, if that argument had been presented to the trial court, the trial court very likely could have told the state we want all their personnel records, I'm issuing a discovery order, I want to know whether any of these people have any problems. Let me just back you up. I appreciate that point. Let me just back up one last point. With respect to the state court's finding about this testifying witness's role vis-a-vis the testing, it used certain words to describe that role and his involvement. I wish I had the words directly in my command, maybe you do, but I think it is something along the lines of what Judge Howard is saying, which is direct involvement. Yes, the court finds at 170 NH page 735, Eisen Schmidt reviewed all of the documentation in the case, including chain of custody, and ensured that all of the information had been correctly entered into the NMS computer system. Eisen Schmidt personally reviewed the actual instrument data and made sure that the data were accurately entered into the NMS computer. Further, he actually reviewed all of the testing results. It's not simply... So can I just say, I didn't see in his testimony where he testified that he made sure it was all correctly entered? I think that that is in the part... He testifies in two different parts, Your Honor, and the first is he talks about the overall process by which NMS does things, and what the procedure is, and then he talks about his own results, and I think it's a fair reading of the record that in that initial testimony, Chief Judge Lynn talked about him as being a fact witness at one point when he was describing what the process was at NMS lab, and I think that if you read that, it's fair to conclude that Judge Lynn's opinion relies in part on that description, and that supports the overall result. Thank you. If the court has no further questions, I will yield to Mr. Sisti. Judge Lopez, I didn't mean to take this in a different role. No, that's fine. Thank you. I'm good. Thanks. Thank you, Attorney Woodcock. You can go ahead and mute your audio and video, and Mr. Sisti, please go ahead and reintroduce yourself on the record to begin. Yes, thank you. Mark Sisti for Watson. If I may continue for the two minutes that I reserved. Yeah, the questions that were brought up actually I can answer that were directed to Attorney Woodcock. In fact, the New Hampshire Supreme Court placed some importance on the Michaels case, which was interesting because in that case, there was an individual, by the way, from NMS labs, Barbary, that in fact was actively involved in actually reviewing compiled calibration and quality control documents, machine generated test results on the defendant's blood sample, etc. That was the Michaels case. In that case, that particular testifier actually had hands-on contact. Mr. Sisti, let me just understand. Are you making a challenge to the reasonableness of the factual determinations of the New Hampshire Supreme Court in your habeas petition? Absolutely. And so are you making a challenge to the reasonableness of the application of law, and where do you also make that argument? Yes. And in fact, that was what was presented to Judge LaPlante. And in fact, we were both invited. And you contend that your brief to us also is making that argument is not only challenging the unreasonable determination of fact? Yes. And in fact, on September 29, 2020, Judge LaPlante asked us to deliver memoranda with regard to his inquiry. So what is the factual determination by the Supreme Court that you contend the record does not reasonably support? That this particular individual, Eisen Smith, had real and direct contact with the testing material and was a competent witness. Is that what they found, that he had real and direct contact with the testing material? Involvement. That he was a real direct, yeah, he was a real direct witness, that he was the capable confrontation witness, that he had jumped that hurdle, that he was the appropriate witness, that he would have covered the confrontation clause. Okay, I'll just ask you one last time. What is the factual determination, the precise factual determination that you say the record does not reasonably support that the New Hampshire Supreme Court made? The factual determination is that Dr. Eisen Smith was a toxicologist competent to testify in the case, that he would have allowed us to be able to confront in a, to actually meet the Sixth Amendment hurdle of confrontation during the course of the trial. That doesn't sound like a factual finding. If there is a fact finding, I'd just like to know what it is, what fact was found by the New Hampshire Supreme Court that you support? The facts that were found by the New Hampshire Supreme Court were that he was a, that he was a competent witness. Counsel, isn't the real and direct requirement is a confrontation clause requirement. In the determination of the New Hampshire Supreme Court, that he met that standard, isn't that a legal determination? That they, they have said, they have opposed that court, looking at the very detailed account of what Dr. Eisen Smith said, concluded that that met, that met the Supreme Court standard. Isn't that a legal determination? I think it's a mixed question of legal determination because it's based on the contact that he would have had during the course of the examinations and laboratory examination. Do you think they do they misdescribe? That he had real and direct contact with the actual testing in this case. I don't think they could have come to that conclusion with the facts before them. And that's because you say that that is a finding about his level of involvement that the record just doesn't support because of his secondary role in just reviewing reports. That's the contention. It's actually a tertiary. He's easy in the third, he's in the third level of review. Got it. He's that far detached. Thank you. And because of that, because of that, we believe that that particular ruling is one that is in general, generally in dispute. That we think that we have rebutted that presumption of correctness. And we think that we've done that with clear and judge LaPlante actually invited us. I'm sorry, I'm sorry, judge, but take 30 seconds just to close up because you've got that he, that judge LaPlante invited us to actually address that and that we both submitted memorandum with regard to that particular issue after a chamber's conference on September 29th, 2020 at the federal district court level. That's helpful. Thank you. Thank you. That concludes the argument. Thank you. Sorry. That concludes argument in this case. Attorney Sisti and attorney Woodcock, you should disconnect from the hearing at this time.